UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Stephen Peoples,

    Plaintiff

v.

T-Mobile USA, Inc.,

    Defendant

Case No.: 2:22-cv-01544-JAD-DJA

**Order Granting Defendant's Motion for Summary Judgment and Closing Case**

[ECF No. 39]

    Stephen Peoples, an African-American man, sues his former employer, T-Mobile USA, Inc., alleging that he was subjected to unlawful racial discrimination. T-Mobile moves for summary judgment in its favor on all of Peoples's claims, deriding them as largely time-barred and otherwise factually insufficient. Peoples opposes T-Mobile's motion, arguing that a genuine dispute of material facts remains and insisting that "it should not take much" for employment-discrimination suits to survive summary judgment.[1] Because the events on which Peoples's claims are based are too stale or otherwise fail to support the required elements of any of his claims, I grant T-Mobile's motion for summary judgment and close this case.

## Background

    Peoples worked at T-Mobile for nearly a decade, first as a sales representative and ultimately as a store manager.[2] He filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in 2018 after unsuccessfully seeking a transfer to a different,

---

[1] ECF No. 46 at 13.

[2] ECF No. 39-3 at 9:3, 10:24–11:1 (depo. of Peoples); ECF No. 39-7 (offer letter for retail-associate-manager position); ECF No. 39-8 (May 24, 2016, offer letter for retail-store-manager position). I cite to CM/ECF pagination for all exhibits.

higher-volume T-Mobile store.[3] In that charge of discrimination, Peoples asserted that he had been discriminated against based on his race, color, religion, and age by T-Mobile manager Manuel Gomez.[4] The EEOC intake notes identify Scott Chassereau as Peoples's district manager and supervisor, but they don't include any allegations that Chassereau acted in a discriminatory manner.[5] The EEOC dismissed the charge and informed Peoples of his right to sue on November 1, 2018.[6] Peoples did not exercise that right and continued to work at T-Mobile.

### A. Employees complain about Peoples's management, and Peoples reports Chassereau for speaking with a "racial undertone."

Peoples's relationship with T-Mobile took a turn for the worse when three anonymous complaints were filed against Peoples in quick succession in May 2019. The complaints, all submitted by employees of the store that Peoples managed, alleged that he allowed his assistant manager to bully employees and misrepresented salesperson duties to shift responsibilities away from himself and the assistant manager to lower-level employees.[7] The investigation into and response to these complaints included a "climate survey," which revealed that employees managed by Peoples generally believed that he did not lead by example or treat his employees

---

[3] ECF No. 39-12 (2018 charge of discrimination).
[4] ECF Nos. 39-12, 39-13 (2018 EEOC intake notes).
[5] *See* ECF No. 39-13.
[6] ECF No. 39-16 (2018 dismissal and notice of rights).
[7] *See* ECF Nos. 39-20 (first May 27, 2019, "Integrity Line" complaint), 39-21 (second May 27, 2019, "Integrity Line" complaint), 39-25 (May 31, 2019, "Integrity Line" complaint).

2

fairly.[8]  Chassereau was tasked with reviewing those survey results with Peoples and supervising his performance-improvement efforts.[9]

Peoples accused Chassereau of repeatedly speaking to him with a "racial undertone" two months after meeting with Chassereau to discuss his climate-survey results and one month after Chassereau issued a performance-improvement plan based on those results.[10]  In an email to human-resources employee Roberta Schoolcraft, he reported that Chassereau had high-fived another employee and said "we got rid of that kind" and criticized Sam Sindha, another employee, for not "speak[ing] well."[11]  Peoples didn't provide the dates on which most of these alleged discriminatory actions occurred.[12]  T-Mobile conducted a climate survey for Chassereau and ultimately produced an investigative report in response to Peoples's allegations after conducting interviews with nine T-Mobile employees, including Peoples and Chassereau.[13]

**B.    Peoples leaves T-Mobile to take another job, unsuccessfully attempts to return, and then files a second charge of discrimination.**

Peoples continued to work at T-Mobile until he secured a new job at the car dealership Centennial Toyota in late 2019.[14]  Peoples announced his resignation in an email to Chassereau

---

[8] *See* ECF No. 39-29 (Peoples climate survey).

[9] ECF No. 39-28 (June 7, 2019, email from Tamara Brydges), ECF No. 39-29 at 3, ECF No. 39-30 (June 2019 email exchange between Chassereau and Marina Lopez-Reyher).

[10] ECF No. 39-33 (Aug. 2019 email exchange between Peoples and Roberta Schoolcraft); *see* ECF No. 39-31 (showing that the climate-results meeting happened on June 13, 2019); *see* ECF No. 39-32 ("Stepping It Up SYNC" document for Peoples dated July 19, 2019).

[11] ECF No. 39-33 at 2–3.

[12] *See id.*

[13] ECF No. 39-36 (Chassereau climate survey results); ECF No. 39-41 (T-Mobile investigation report).

[14] ECF 39-13 (Peoples application to Centennial Toyota).

3

and other T-Mobile employees in which he expressed dissatisfaction with "Las Vegas North leadership" and complained that when an unnamed member of leadership was "caught displaying bad behaviors and racial epithets, things [were] different for him."[15] Two days later, Peoples emailed T-Mobile executive Jon Freier to clarify that Chassereau was the reason for his resignation.[16] This email echoed some accusations from his earlier email to Schoolcraft, while adding that Chassereau had pressured his team to report "all of the negative stuff that they could think about me" and that Chassereau's cheeks had turned "blush red" when Peoples pointed out things that he had "done wrong."[17] Again, he did not say when these incidents had happened.

Peoples attempted to return to T-Mobile after the car-dealership job fell through, assuring Freier that he had "100% faith" that his concerns had been "corrected."[18] He also expressed that he "was heard loud & clear and it was taken care of," regarding the investigation of Chassereau.[19] When T-Mobile failed to hire him back, Peoples filed a second charge of discrimination on March 2, 2020.[20]

He then filed this employment-discrimination suit against T-Mobile on July 29, 2022, alleging that his former employer violated Title VII, Nevada Revised Statutes (NRS) 613.310 *et seq.*, and 42 U.S.C. § 1981.[21] The complaint repeats some of Peoples's earlier allegations against Chassereau and alleges for the first time that Chassereau used the n-word twice in

---

[15] ECF No. 39-39 (Peoples resignation email).
[16] ECF No. 39-40 (Dec. 11, 2019, email from Peoples to Freier).
[17] *Id.* at 3.
[18] ECF No. 39-44 at 2 (Dec. 29, 2019, email from Peoples to Freier).
[19] *Id.*
[20] ECF No. 39-45 at 6 (2020 charge of discrimination).
[21] ECF No. 1-3. This suit was originally filed in state court and removed to federal court.

4

Peoples's presence.[22]  According to Peoples, Chassereau first told another manager in 2017, "I didn't want those [n-words] to have a paper trail," and then later in 2018 called Peoples an "arrogant [n-word]."[23]  T-Mobile moves for summary judgment on all claims.[24]

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[25]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[26]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[27]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[28]  But "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact."[29]

---

[22] *See id.*  Peoples recounts these utterings in his declaration in support of his opposition to the motion for summary judgment.  *See* ECF No. 46-1.

[23] *Id.* at 4–5, ¶¶ 18, 20.

[24] ECF No. 39.

[25] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[26] *Id.* at 323.

[27] *Id.* at 322.

[28] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[29] *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).

**A.    T-Mobile is entitled to judgment as a matter of law on Peoples's first cause of action.**

Peoples pleads two causes of action in his complaint: "discrimination based on race in violation of federal and state law" and "violation of civil rights under 42 U.S.C. § 1981."[30] But both parties argue as though Peoples is claiming disparate treatment, constructive discharge, and hostile-environment harassment—all apparently within that first discrimination cause of action. I address each in turn because, to the extent that Peoples relies on these theories, the record falls short of establishing their required elements.

> **1.    The record doesn't show that Peoples suffered an adverse employment action, an essential element of his disparate-treatment claim.**

Peoples alleges that he was "treated differently because of his race" while working at T-Mobile in violation of Title VII and NRS 613.310, *et seq*.[31] To establish a prima facie case of racial discrimination under Title VII, a plaintiff must allege that he: (1) belongs to a class of persons protected by Title VII; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) was treated differently than a similarly situated employee who doesn't belong to the same protected class.[32] "The Nevada Supreme Court looks to Title VII cases for guidance in the application of [NRS] 613.310, *et seq.*, for unlawful employment practices."[33]

T-Mobile argues that it is entitled to judgment on Peoples's disparate-treatment theory because he can't prove any required element except that he's a member of a protected class:

---

[30] ECF No. 1-3 at 7, 9.

[31] *Id.* at 8, ¶ 33.

[32] *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).

[33] *Hirschorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1995) (citing *Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980)).

6

Peoples cannot show that he was performing his job satisfactorily, he never actually suffered any adverse employment action, and he hasn't established that similarly situated employees outside of his protected class received better treatment.[34] Peoples retorts that he "was adequately performing his job but it appears that [T-Mobile] disputes this fact," that he suffered at least one adverse employment action when he unsuccessfully applied for a transfer to a high-volume store, and that the white assistant manager who received that transfer instead was treated differently than him.[35]

### a. Peoples doesn't offer adequate factual support for his allegation that he lost a transfer opportunity to Mitch Weiss.

Peoples wasn't fired; he voluntarily left T-Mobile to take a job at Centennial Toyota. He attempts to overcome this apparent lack of an adverse employment action by claiming that he "sought a transfer to a higher volume store location at Craig and Losee" but Chassereau told him not to apply for that position.[36] The only evidence that Peoples offers to support this allegation is a portion of his deposition in which he testifies that Mitch Weiss, "a brand new RSM," was promoted to a high-volume store and "everyone else was told not to apply for that location."[37] In the portion of the transcript supplied to the court,[38] Peoples does not clarify whether he actually applied or attempted to apply for this transfer, who told others not to apply, who he meant by "everyone else," or when any of this happened. When asked what facts he had to support the

---

[34] ECF No. 39 at 18–21.

[35] ECF No. 46 at 15–16.

[36] *Id.* at 17. This allegation is seemingly distinct from the 2018 transfer attempt that was the subject of Peoples's first charge of discrimination because that was an effort to transfer to a high-volume store located "on Charleston and Decatur." ECF No. 39-13 at 4.

[37] ECF No. 39-3 at 78:12–18; *see* ECF No. 46 at 17–18 for the citation.

[38] Peoples cites two pages of his deposition transcript, but only one of those pages has actually been submitted to the court.

7

allegation, Peoples replied, "Call T-Mobile and ask them."[39]  T-Mobile stresses that this is a "factually unsupported allegation," but it also clarifies that Mitch Weiss received that promotion in October 2017.[40]

Peoples offers nothing to show that he properly exhausted his available administrative remedies for a claim based on his attempt to transfer to the "Craig and Losee" location.  But even setting that aside, this new unsuccessful-transfer allegation does not create a genuine issue as to whether he experienced an adverse employment action because it lacks clarity and meaningful support.  As the United States Supreme Court has articulated, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."[41]

### b. *A transfer-denied theory based on Peoples's 2018 charge of discrimination is time-barred.*

Even if Peoples could marshal the facts necessary for this transfer-denied theory, the claim would fail because it's untimely.  Title VII suits must be filed within 90 days of the plaintiff receiving notice of his right to sue,[42] and Nevada law requires that employment-discrimination suits be brought within 180 days of the challenged action or 90 days of receiving a right-to-sue notice.[43]  Actions filed outside these limitation periods are time-barred.[44]

---

[39] ECF No. 39-3 at 78:20.

[40] ECF No. 47 at 2.

[41] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[42] 42 U.S.C. § 2000e-5(f)(1); *see also Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1121–22 (9th Cir. 2007).

[43] Nev. Rev. Stat. § 613.430.

[44] *Id.*; *Payan*, 495 F.3d at 1121.

Peoples sought a transfer to a high-volume T-Mobile store "on Charleston and Decatur" in early 2018 and learned on March 8, 2018, that he would not receive that transfer.[45] He filed a charge of discrimination with the EEOC in June 2018, reporting allegedly discriminatory statements by manager Manuel Gomez.[46] The EEOC issued notice of Peoples's right to sue on November 1, 2018, and he filed this lawsuit three-and-a-half years later on July 29, 2022.[47] That places this suit solidly beyond the limitations periods that apply to Peoples's Title VII and state-law claims. And, for that matter, outside the four-year statute of limitations that applies to § 1981 claims.[48] So any claim based on Peoples's 2018 transfer attempt that was the subject of his first charge of discrimination is time-barred.

Peoples voluntarily left T-Mobile to take another job, hasn't offered proper factual support or established administrative exhaustion for his transfer attempt involving Mitch Weiss, and claims based on his 2018 transfer attempt are time-barred. Because Peoples cannot show that he experienced a factually supported, non-time-barred adverse employment action, my analysis ends here. I grant summary judgment in T-Mobile's favor on his racial-discrimination claim based on disparate treatment, because Peoples cannot establish disparate treatment without showing that he experienced an adverse employment action.

---

[45] ECF No. 39-13 at 3–4.

[46] ECF Nos. 39-12, 39-13.

[47] *See* ECF No. 1-3 at 2. While the complaint is dated July 28, *see id.* at 11, it was electronically filed the next day, and there is no documentation provided that the complaint was actually filed on the 28th.

[48] *See, e.g.*, *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382–83 (2004). The four-year statute of limitations for § 1981 claims starts to run when a plaintiff "knows or has reason to know of the actual injury." *Lukovsky v. City and Cnty. of S.F.*, 535 F.3d 1044, 1051 (9th Cir. 2008).

### 2. Peoples's constructive-discharge theory fails because he can't show intolerable conditions at the time of his resignation.

Peoples claims that although he chose to leave T-Mobile to take another job in December 2019, it was the result of "being constructively discharged in a discriminatory manner."[49] T-Mobile argues that his alleged work conditions don't meet the high standard necessary to establish constructive discharge,[50] so summary judgment on this theory is warranted.[51] Peoples responds to this argument very briefly, identifying part of his own declaration and his resignation email as the evidence that he was constructively discharged.[52]

A constructive discharge is "tantamount to an actual discharge" under Title VII.[53] To claim constructive discharge, a plaintiff must establish that he was "discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign" and that he did actually resign.[54] The plaintiff must meet a high bar: he must show that working conditions were "sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood."[55] "[C]onstructive discharge cannot be based upon the employee's subjective preference for one position over another."[56]

---

[49] ECF No. 1-3 at 8, ¶ 33.
[50] ECF No. 39 at 24–26.
[51] *Id.* at 27.
[52] ECF No. 46 at 6.
[53] *Green v. Brennan*, 578 U.S. 547, 555 (2016).
[54] *Id. See also Pa. State Police v. Suders*, 542 U.S. 129, 130 (2004).
[55] *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007) (citation omitted).
[56] *Id.* at 1185.

     *a.*  ***The racial harassment is too attenuated from the resignation.***

   To be sure, racial slurs—like the n-word, which People alleges Chassereau used twice—can create an intolerable working environment that supports a constructive-discharge claim.[57] But the Ninth Circuit has "long required that an employee asserting constructive discharge establish that his . . . working conditions were 'intolerable at the time of the employee's resignation,'"[58] and when those conditions end well before the employee quits, the claim fails. So in *Manatt v. Bank of America*, the panel held "Manatt's constructive discharge claim . . . untenable in light of the fact that the alleged racially offensive work environment ended" two years before she quit.[59] And in *Steiner v. Showboat Operating Company*, the court found the fact that racially harassing conduct ended "two and one-half months prior to [the employee's] resignation" militated against her claim and supported summary judgment because the condition "must be intolerable" at the time of the resignation.[60]

   The Seventh Circuit's application of these same rules in the factually analogous case of *Wince v. CBRE, Inc.* is instructive here.[61] Sylvester Wince, a Black man, argued that he had been constructively discharged because his former employer had denied him promotions and

---

[57] *See Satterwhite v. Smith*, 744 F.2d 1380, 1382 n.2 (9th Cir. 1984) ("a court may find a constructive discharge when the employer's act of discrimination consisted of continually subjecting his employee to racial insults"); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004) (noting that "[i]t is beyond question that" the n-word "is highly offensive and demeaning" and "perhaps the most offensive and inflammatory racial slur in" the English language).

[58] *Wallace v. City of S.D.*, 479 F.3d 616, 632–33 (9th Cir. 2007) (quoting *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (finding no constructive discharge when "at the time Wallace resigned, hostile conditions had abated for three months").

[59] *Manatt v. Bank of Am., NA*, 339 F.3d 792, 804 (9th Cir. 2003).

[60] *Steiner*, 25 F.3d at 1465.

[61] *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023).

ignored his filed grievances, his coworkers had nicknamed him "Sly" (which he considered to be racially derogatory), managers had made comments that he found biased, and unknown people had written the n-word on his lunchbox along with hurtful comments like "we don't want you here."[62] Wince resigned to take another job "two or three years" after the lunchbox incident.[63] The *Wince* panel affirmed the lower court's summary-judgment finding that Wince hadn't been constructively discharged, reasoning that the lunchbox incident was "the only racist episode that finds support in the record," and Wince's failure to report it to his employer combined with his choice to stay at the company for "two or three years" afterwards belied constructive discharge.[64]

Peoples continued to work at T-Mobile until December 2019 after Chassereau's alleged use of the n-word in "late 2017" and in 2018.[65] And like Wince, Peoples "voluntarily resigned" his position at T-Mobile "only after securing a comparable job" elsewhere.[66] So I find that these racial-slur incidents are far too attenuated from Peoples's resignation to support his constructive-discharge theory.

---

[62] *Id.* at 1038.

[63] *Id.* at 1043.

[64] *Id.* at 1043.

[65] ECF No. 46-1 at 3, ¶ 3 (Peoples's decl.).

[66] *Id.* at 1043. Other district courts within the Ninth Circuit have also found that an employee failing to immediately resign after "actions he contends constituted constructive discharge" and instead leaving "only after he secured another job" supports summary judgment on a constructive-discharge claim. *See Guyton v. Novo Nordisk, Inc.*, 151 F. Supp. 3d 1057, 1090–91 (C.D. Cal. 2015); *see also Mead v. Bank of Am.*, 2008 WL 706632, at *7 (D. Nev. Mar. 14, 2008) ("the plaintiff had already secured and accepted a job at a different bank, a fact that clearly belies her claim of constructive discharge"); *Dearmon v. Ferguson Enters., Inc.*, 2015 WL 6550743, at *9 (D. Or. Oct. 28, 2015) ("that [the] plaintiff did not quit immediately suggests [the] defendant's workplace was not so intolerable that a reasonable person would have felt forced to quit").

12

> **b.    The evidence of the environment at the time Peoples quit does not support a constructive-discharge claim.**

Nothing else that Peoples points to can support a reasonable juror's finding that his working conditions in December 2019 were so extraordinary and egregious that he had no choice but to quit. In the resignation email that Peoples relies on to create a genuine dispute of fact, he expresses dissatisfaction about "leadership" and makes a vague reference to a leader "caught displaying bad behaviors and racial epithets."[67] Peoples's post-resignation follow-up to that email offers more specific allegations: he accuses Chassereau of referring to another African-American employee as "that kind" and encouraging Peoples's team to say "negative stuff" about him at a meeting.[68] But this handful of distinct incidents does not meet constructive discharge's demanding standard—showing that the working conditions were so intolerable that a reasonable person would feel compelled to leave his job. And while Peoples states in his follow-up email that the reference to that employee as "that kind" was "[o]ne of the last straws" in his decision to leave,[69] this event happened at least four months before Peoples's resignation, as evidenced by the fact that he reported it to Roberta Schoolcraft at T-Mobile in an August 13, 2019, email.[70] Peoples attempts to buttress these events with his own declaration that he "knew that [he] had no choice but to leave" T-Mobile after he reported Chassereau "to various HR staff" and

---

[67] *See* ECF No. 39-39.
[68] ECF No. 39-40.
[69] ECF No. 39-40 at 3.
[70] ECF No. 39-33 at 2.

13

Chassereau's behavior didn't change.[71]  But this statement is self-serving and otherwise factually unsupported, so, as a matter of law, it can't create a triable issue of fact.[72]

Other evidence about People's perception of his working climate undermines a constructive-discharge finding.  Three months before Peoples left T-Mobile, he commented on the climate survey of Chassereau that, despite his dissatisfaction with Chassereau's behavior, "[t]he morale is, for the most part, healthy."  When asked during his deposition whether he left T-Mobile due to Centennial Toyota's "promises of success" rather than a constructive discharge, Peoples responded "[w]here was I constructively discharged from?"  When questioned about receiving an offer from Centennial Toyota before leaving, Peoples responded that he "wasn't going to leave [T-Mobile] without a job."  Plus, Peoples actively tried to return to his employment at T-Mobile after his job at Centennial fell through.[73]

The totality of this evidence overwhelmingly belies any notion that Peoples's working conditions were so extraordinary and egregious at the time of his departure that he felt forced to leave.  So to the extent that Peoples claims that he was constructively discharged, I grant summary judgment in T-Mobile's favor on that theory.

### 3. *Peoples's hostile-work-environment harassment claim is time-barred.*

Peoples briefly alleges in his first cause of action that he was "subjected to being harassed and subjected to a hostile work environment."[74]  T-Mobile insists that Peoples cannot support a "race[-]discrimination claim based on harassment/hostile work environment" because

---

[71] ECF No. 46-1 at 4, ¶ 9 (Peoples decl.).

[72] *See, e.g., F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (declaring that a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" doesn't create a genuine issue of material fact).

[73] ECF No. 39-44.

[74] ECF No. 1-3 at 8, ¶ 33.

14

the harassment that he alleges is vague and sporadic.[75] It also argues that all "alleged racially harassing conduct by" Chassereau should be considered time-barred.[76] Peoples insists that the harassment he experienced was "ongoing," as evidenced by his complaint to Schoolcraft and his two resignation emails.[77]

"[S]o-called 'hostile environment' (i.e., non *quid pro quo*) harassment violates Title VII."[78] Both federal and Nevada law requires that a claimant file a charge of discrimination within 300 days of a discriminatory act.[79] But the United States Supreme Court has found that if any act contributing to a hostile work environment falls within that limitations period, "the entire time period of the hostile environment may be considered by a court."[80] Peoples filed the charge of discrimination that is the basis of this suit on March 2, 2020.[81] Crucially, however, he doesn't offer evidence that any of Chassereau's discriminatory acts happened within 300 days before that date.

At least one incident supporting the hostile-environment claim must have happened on May 7, 2019, or later for the rest to be considered timely. In his deposition, Peoples testified that he did not know the month or even the year in which the conduct alleged in his complaint had

---

[75] ECF No. 39 at 27–28.

[76] *Id.* at 22.

[77] ECF No. 46 at 20.

[78] *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986); *see also Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013).

[79] 42 U.S.C. § 2000e-5(e)(1) (this provision's 300-day deadline applies because Peoples dual-filed his 2020 charge of discrimination with the Nevada Equal Rights Commission, a state agency); Nev. Rev. Stat. § 233.160.

[80] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

[81] *See* ECF No. 39-45.

15

happened.[82] His 2020 charge of discrimination asserts that Chassereau's harassment began around July 2017, but it doesn't recount any incidents within the 300-day window.[83] And his declaration confirms that the two incidents of Chassereau using the n-word happened in late 2017 and 2018.[84]

Peoples's August 2019 email to Schoolcraft and his resignation emails don't clarify the timeline. In the Schoolcraft email, Peoples alleges several discrete acts by Chassereau without identifying the dates that they happened.[85] He does state that, on "July 30," Chassereau "exchang[ed] smug smirks" with "Mannie" and tried to intimidate Peoples by asking why he had "copied Joe on the email."[86] That date can reasonably be interpreted as July 30, 2019, but construing a smirk and asking about email recipients as harassment contributing to a hostile work environment is an impermissible stretch. Peoples's resignation and follow-up email to Jon Freier also offer no dates for his allegations against Chassereau.[87]

Vague statements that Chassereau's harassment was continuous without proof that it continued within 300 days of Peoples filing his charge of discrimination isn't enough to get past summary judgment. Without any evidence of harassment within the relevant limitations period, Peoples can't establish that the statute of limitations should be extended to account for continuing violations. So to the extent that Peoples claims hostile-environment harassment, I grant summary judgment in T-Mobile's favor.

---

[82] ECF No. 39-3 at 77:2–4, 10–11.
[83] ECF No. 39-45.
[84] ECF No. 46-1 at 3, ¶ 3.
[85] *See* ECF No. 39-33.
[86] *Id.*
[87] ECF Nos. 39-39, 39-40.

### B. Peoples's second cause of action is treated as identical to the first by both parties, so it also fails for the same reasons.

Peoples's second cause of action alleges that T-Mobile violated 42 U.S.C. § 1981 by "failing to provide equal contractual opportunities to black African-American employees."[88] Peoples's perfunctory second cause-of-action raises no distinct issues that would save his § 1981 claim while his other claims fall short. T-Mobile treats Peoples's Title VII, NRS 613, and § 1981 claims as a monolith, arguing for summary judgment on each potential discrimination claim without distinguishing by statute. For his part, Peoples makes no effort to distinguish his § 1981 cause of action in his opposition to summary judgment, characterizing his claims under Title VII, NRS 613, and § 1981 as "identical."[89] With no identified grounds to let Peoples's second cause of action go to trial when his first fails as a matter of law, I also grant summary judgment in T-Mobile's favor on Peoples's § 1981 claim.

### Conclusion

IT IS THEREFORE ORDERED that defendant T-Mobile's motion for summary judgment **[ECF No. 39] is GRANTED**. The Clerk of Court is directed to **ENTER JUDGMENT in favor of the defendant and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
June 27, 2025

---

[88] ECF No. 1-3 at 9, ¶ 47.
[89] ECF No. 46 at 7.